UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LOVE, | No. C-12-05679 DMR |
| Plaintiff(s), | **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 58]** |
| v. | |
| THE PERMANENTE MEDICAL GROUP, | |
| Defendant(s). | |

Before the court is the joint discovery letter ("Letter") filed by Plaintiff Robin Love and Defendants The Permanente Medical Group, Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan (collectively, "Defendants"). [Docket No. 58.] At issue is the sufficiency of Defendants' responses to certain of Plaintiff's interrogatories and requests for production of documents ("RFPs"). The court conducted a hearing on August 8, 2013. Plaintiff's motion to compel further discovery responses is granted, subject to the limitations set forth below.

## I. BACKGROUND

Plaintiff was employed as a chemical dependency therapist from September 2008 until May 2012 in the Chemical Dependency Services department of Defendants' South San Francisco hospital facility. Plaintiff contends she was employed without incident until another therapist notified her that a patient had made a death threat against her and Plaintiff complained that Defendants failed to properly respond. Plaintiff alleges that her supervisor, Director of Psychiatry Kenneth Shigematsu,

retaliated against her for complaining about his actions or inactions in response to the threatening patient. Defendants contend that Plaintiff was terminated for errors in patient care, failures to chart properly, misstatements about her schedule, and other work-related problems. Plaintiff sues for retaliation, breach of contract, wrongful termination against public policy, wrongful termination of hospital privileges, and intentional infliction of emotional distress.

On May 16, 2013, Defendants responded to Plaintiff's First Set of Interrogatories and RFPs. Plaintiff contends that Defendants' responses are insufficient. The disputed discovery involves distinct categories of information that are summarized below.

## II. DISCOVERY DISPUTES

**A. Documents Relating to Plaintiff's Privileges and Credentials (RFP Nos. 4, 9, 69)**

This category of discovery requests seeks documents relating to Plaintiff's privileges and credentials. *See* Letter Ex. B, RFP No. 4 (privileges and credentials file for Plaintiff), 49 (documents in Mr. Shigematsu's files relating to Feb. 3, 2012 Credentials and Privileges Committee meeting), and 69 (minutes, notes, summaries, and correspondence regarding Feb. 3, 2012 Credentials and Privileges Committee meeting). Defendants did not provide responses to these RFPs and instead objected to them on the basis of, inter alia, peer review privilege, therapist and doctor-patient privilege, patient privacy, and employee privacy. However, Defendants' May 30, 2013 privilege log indicates that, with the exception of one set of documents,[1] all of the documents are withheld on the basis of peer review privilege. *See* Letter Ex C (privilege log).

---

[1] This set of documents is the personnel file of Kenneth Shigematsu, which Defendants withheld for reasons of privacy and relevance. These objections are discussed separately in the next section.

This court exercises federal question jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331[2] and supplemental jurisdiction over Plaintiff's pendent state law claims. The issue is whether federal or state law governing privileges should apply.

California's peer review privilege law provides that "[n]either the proceedings nor the records of organized committees of medical . . . staffs in hospitals . . . having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . shall be subject to discovery." *Pomona Valley Hosp. Med. Ctr. v. Superior Court*, 209 Cal. App. 4th 687, 693-94, 147 Cal. Rptr. 3d 376, 379-80 (Cal. Ct. App. 2012) (quoting Cal. Evid. Code § 1157(a)). The peer review privilege "embodies the [California] Legislature's belief that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity and that the quality of in-hospital medical practice is improved by insulating staff investigations with confidentiality." *Id.* (quotations omitted).

Peer review privilege is not recognized under federal law. *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) ("No case in this circuit has recognized the [medical peer review] privilege"; declining to find or create a federal peer review privilege when "Congress has twice had occasion and opportunity to consider the privilege and not granted it either explicitly or by implication"). *See also Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990) (declining to recognize peer review privilege against disclosure of university's tenure-review files where former faculty member brought Title VII discrimination action); *Dowling v. Am. Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir. 1992) ("[N]o privilege of 'self-critical analysis' protects routine internal corporate reviews of matters related to safety concerns" in personal injury case). Several federal

---

[2] Even though Plaintiff's claims are pled as state law claims, both parties agree that the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 301, preempts Plaintiff's breach of contract claim and thus raises a federal question. *See Humble v. Boeing Co.,* 305 F.3d 1004, 1007 (9th Cir. 2002) ("The Supreme Court has held in a variety of contexts that Section 301 acts to preempt state law claims that substantially depend on [a] CBA [collective bargaining agreement] or that seek to enforce the terms of the CBA, for example, breach of contract claims."); *Bishop v. Avis Budget Grp., Inc.*, No. C-13-566 SBA, 2013 WL 2081614 at *3 (N.D. Cal. May 14, 2013) (finding the court to have federal question jurisdiction over case in which plaintiff's state law breach of contract and breach of implied covenant of good faith and fair dealing claims were preempted by LMRA).

3

1 courts have specifically declined to create a federal common law privilege analogous to Section
2 1157 because it would be inconsistent with the liberal policy of discovery under federal law. *See,*
3 *e.g. Leon v. Cnty. of San Diego*, 202 F.R.D. 631, 635-36 (S.D. Cal. 2001) ("In the context of other
4 federal question cases, courts have found that section 1157's absolute bar on discovery is in conflict
5 with the more liberal policy of discovery inherent in the Federal Rules."); *Burrows v. Redbud*
6 *Community Hosp.,* 187 F.R.D. 606, 609 (N.D. Cal. 1998) (declining to create a federal privilege
7 patterned after Section 1157 because it would act as an "absolute shield" against discovery, and
8 therefore "would be inconsistent with the federal policy against privileges and in favor of broad
9 disclosure").

10 Federal privilege law generally applies in federal question cases. Fed. R. Evid. 501,
11 Advisory Committee Notes ("In nondiversity jurisdiction civil cases, federal law privilege will
12 generally apply.") However, "[i]n civil actions and proceedings, where the rule of decision as to a
13 claim or defense or as to an element of a claim or defense is supplied by state law . . . state privilege
14 law [applies]." *Id.* The interplay of these two principles has created somewhat inconsistent case law
15 regarding the application of federal privilege doctrine to pendent state law claims in federal question
16 cases. Some courts, including the Ninth Circuit, have held that in federal question cases, the federal
17 law of privileges governs all claims, including pendent state law claims. *Agster*, 422 F.3d at 839-40
18 ("Where there are federal question claims and pendent state law claims present, the federal law of
19 privilege applies.") (citing Fed. R. Evid. 501); *Wm. T. Thompson Co. v. General Nutrition Corp.*,
20 671 F.2d 100, 104 (3rd Cir. 1982) ("[W]hen there are federal law claims in a case also presenting
21 state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the
22 controlling rule . . . . [T]he general rule in federal practice disfavor[s] privileges not constitutionally
23 based."); *Burrows,* 187 F.R.D. 606 (holding that federal privilege law, not state law, applies because
24 the court had federal question jurisdiction over plaintiff's claim under the Emergency Medical
25 Treatment and Active Labor Act and supplemental jurisdiction over plaintiff's pendent state law
26 claims).

27 At least two courts in the Ninth Circuit have applied federal privilege law to evidence
28 relevant to the federal claims, and state privilege law to evidence relevant *only* to the state law

4

claims. *Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F. Supp. 808, 812 (S.D. Cal. 1995) ("The need for consistency requires federal courts to apply federal privilege policies, rather than state privilege law, where evidence goes to both federal and state law claims. However, that policy of consistency cannot be used to justify ignoring the express language of Rule 501 where evidence can be relevant *only* to state law claims. Where the application of state privilege law to evidence in support of a claim arising under state law creates no conflict, such as where the evidence sought can be relevant only to state law claims, the state law privilege should be applied consistent with the express language of Rule 501.")[3]; *Guzman-Ibarguen v. Sunrise Hosp. and Medical Center*, No. C-10-1228, 2011 WL 2149542 (D. Nev. June 1, 2011) (applying Nevada medical peer review privilege to quality reports of hospital's quality and safety board because that evidence was relevant only to state law medical malpractice claims and not to the federal EMTALA claim).

Defendants urge this court to follow *Guzman-Ibarguen,* and apply the peer review privilege to evidence relevant only to Plaintiff's state law claims. Defendants argue that the disputed discovery requests are not relevant to the federal question, and are only relevant, if at all, to Plaintiff's state law claim for loss of hospital privileges. The court disagrees and instead will apply federal privilege law to all claims in this case. First, published Ninth Circuit precedent holds that federal privilege law applies to both federal claims and pendent state law claims in cases in which its subject matter jurisdiction is premised on federal question jurisdiction. Second, it appears that the discovery sought is relevant to the federal claim. Plaintiff asserts that Defendants brought false charges against Plaintiff through the privilege and peer review process—for example, by seeking and obtaining a modification of Plaintiff's privileges through the peer review process, and subjecting her to a unilateral requirement for charting review (an action which prompted Plaintiff's union representative to send a cease and desist letter to the hospital). At the hearing, Plaintiff's counsel also noted that the disciplinary actions taken by the Credentials and Privileges Committee were not

---

[3] In reaching this conclusion, the *Platypus* court also stated that "the Ninth Circuit has not addressed the issue of what privilege law should be applied in cases involving both state and federal claims." 905 F.Supp. at 811. This court notes that the *Platypus* decision predates *Agster*, a published Ninth Circuit decision in which the court held that "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." 422 F.3d at 839-40.

progressive, as required by the collective bargaining agreement. Thus Plaintiff's privileges and credentials file, as well as the narrow and date-specific Credentials and Privileges Committee documents identified by Plaintiff in her RFPs, may well be relevant to Plaintiff's federal claim and her contention that she was terminated without just cause in breach of her collective bargaining agreement.

As a third and final reason to apply federal privilege law, the court notes that a contrary rule that would require federal privilege law to be applied to information relevant to federal claims and state privilege law to be applied to information relevant only to state law claims brought in the same lawsuit would be unworkable, as it would require the producing party to determine to which of the receiving party's claims a particular piece of evidence is relevant. The producing party has neither the knowledge nor the motivation to interpret the receiving party's claims broadly enough to cover the requested information, and the inevitably ensuing disputes over the evidence would have to be resolved via piecemeal judicial intervention.

Because the court applies federal privilege law, Defendants' objections to Plaintiff's discovery requests on the basis of California peer review privilege are overruled, and the court need not consider whether Defendants have waived California's peer review privilege or whether that privilege does not cover the type of discovery at issue.[4]

The peer review privilege is the only objection asserted by Defendants to this category of discovery. As the court finds that privilege inapplicable here, Plaintiff's motion to compel further response to RFP Nos. 4, 9, and 69 is granted.

**B. Discovery Relating to Mr. Shigematsu (Interrogatory Nos. 9-10, RFP Nos. 46-48, 51-53)**

Plaintiff argues that Mr. Shigematsu, as Plaintiff's supervisor, was both the subject of her complaints about workplace safety and the primary person responsible for her termination. Plaintiff

---

[4] Defendants have also filed an administrative motion seeking leave of the court to file two supplemental declarations to their supplemental brief. [Docket No. 86.] The declarations were relevant to whether certain information over which Defendants asserted peer review privilege actually fell within California's peer review privilege; because the court finds that the peer review privilege does not apply here, the motion to file the declarations is denied as moot. Plaintiff subsequently requested leave of the court to file under seal the exhibit to her response to Defendants' administrative motion, to protect the alleged confidentiality of documents marked "Confidential" by Defendants. [Docket No. 90.] That motion is granted.

contends that the discovery conducted to date demonstrates that Mr. Shigematsu had a reputation for engaging in retaliatory conduct and had a pattern of taking retaliatory actions against Plaintiff. Therefore, Plaintiff argues, any complaints by other employees against Mr. Shigematsu would be relevant to show his reputation, pattern, and motive for retaliatory conduct. This set of discovery requests seek his personnel file, his performance evaluations, and information about prior complaints against him, as well as any investigation, discipline, or corrective action.

Defendants assert two objections to this discovery category. First, Defendants contend that Plaintiff has no basis for her belief that Mr. Shigematsu engaged in retaliatory conduct because Mr. Shigematsu testified at his deposition that he had not had been subjected to discipline and had not been the subject of other retaliation complaints. However, discovery at this stage is broad and it would be illogical to require Plaintiff to prove that Mr. Shigematsu engaged in prior retaliatory conduct in order for her to request relevant discovery. Second, Defendants argue that Mr. Shigematsu has a privacy right in his personnel files. However, Defendants have not articulated any reason why Mr. Shigematsu's privacy would not be sufficiently protected if sensitive employee information was designated as "Confidential" pursuant to the parties' protective order. *See* Docket No. 30. Accordingly, Defendants are ordered to produce the information requested in Plaintiff's Interrogatory Nos. 9-10 and RFP Nos. 46-48, 51-53. As discussed at the hearing, responses on this category of discovery requests shall be restricted to documents from 2005 until the present. The parties are directed to meet and confer regarding a reasonable list of sources which Defendants will search for responsive documents, e.g., compliance documents, human resources documents, documents pertaining to people known to have made complaints against Mr. Shigematsu, and/or the documents of the Quality Committee. Mr. Shigematsu's personnel file shall be produced by August 22, 2013. All other responsive information shall be produced by August 29, 2013.

**C. Discovery Relating to April 6, 2012 Incidents (Interrogatory Nos. 5-6, RFP Nos. 35, 37, 38, 40, 54)**

Three of the seven incidents forming Defendants' basis for terminating Plaintiff occurred on April 6, 2012. On that day, Plaintiff conducted a patient intake by phone from her office instead of in-person at the hospital, for which Defendants charged her with violating the standard of care. In

7

addition, Defendants contend that Plaintiff altered her chart notes to state that her manager authorized her to do the intake by phone. Finally, Plaintiff faced a disciplinary charge for declining to conduct a hospital intake. Plaintiff claims, and Defendants dispute, that she already had an intake scheduled that afternoon in Chemical Dependency Services. The patient at issue in this incident was subsequently seen by a psychiatrist at the hospital on an emergency basis. This category of discovery requests seeks information relating to these three incidents.

First, Plaintiff requests the medical records of the two patients at issue, one whom she consulted by phone and the other for whom she did not conduct intake on April 6, 2012. *See* RFP Nos. 35 (medical records of patient admitted to hospital on April 6, 2012, whom Plaintiff consulted over the phone) and 40 (medical records of patient seen on an emergency basis by psychiatrist on April 6, 2012, allegedly because Plaintiff refused to conduct intake). Plaintiff argues that these records would demonstrate that her actions did not negatively impact those patients. Defendants contend that the patients' outcomes are not at issue. Plaintiff explained at the hearing that one of Defendants' reasons for terminating Plaintiff's employment was that she was a risk to patient safety. She argues that discovery of the medical records of the two patients described above could demonstrate that Plaintiff's actions, when viewed in context, were not reasonably likely to lead to patient harm, which would cast doubt on Defendants' stated rationale for terminating Plaintiff's employment. In light of the relevance of this discovery and the privacy protections afforded by the parties' protective order, Plaintiff's motion to compel further responses to RFP Nos. 35 and 40 is granted. Plaintiff agreed at the hearing that the discovery should be limited to records relating to the hospitalizations of those two patients ending on April 6, 2012. This discovery shall be produced by August 29, 2013.

Second, Plaintiff seeks the April 6, 2012 schedules of other staff members in the relevant departments to demonstrate that other providers were available to see patients, such that the patient for whom Plaintiff did not conduct intake did not need to be seen on an emergency basis. *See* RFP Nos. 37-38 (schedules for all employees who worked in Chemical Dependency Services or the Department of Psychiatry on April 6, 2012). Defendants argue that the availability of the other hospital employees does not bear on whether and how Plaintiff was required to conduct intake, and

8

furthermore that discovery of the work schedules would infringe those employees' privacy rights. However, Plaintiff has adequately demonstrated the potential relevance of the discovery sought, and Defendants have not explained how employees have privacy rights in a single work schedule that could not be protected by the parties' protective order. Accordingly, Plaintiff's motion to compel with respect to RFP No. 37-38 is granted. This discovery shall be produced by August 29, 2013.

Finally, Plaintiff seeks correspondence from or to Mr. Shigematsu "regarding the use of Chemical Dependency Services employees to perform hospital duty, crisis duty, or any other services for the Department of Psychiatry, for the time period from 2008 to 2012." RFP No. 54. Plaintiff argues that the April 6, 2012 incidents "had nothing to do with [Plaintiff's] professional abilities or judgment and instead were examples of longstanding, systemic problems in having [Chemical Dependency Services] staff perform hospital duty," and that the discovery sought "is relevant to show that Mr. Shigematsu's allegations against Plaintiff were motivated by long-standing disputes he had with CDS regarding the performance of hospital duty by CDS staff." Letter at 2-3. Defendants again object on the basis of relevance and employee privacy. Plaintiff has demonstrated how these records are relevant to her claims, particularly to her argument that the bases for the disciplinary actions taken against her were pretextual. Defendants' privacy concerns can be addressed through the parties' protective order. Accordingly, Plaintiff's motion to compel Defendants to respond to RFP No. 54 is granted. As the parties and court discussed at the hearing, the search for documents responsive to this request shall include a search of Mr. Shigematsu's files, including his computer files and emails, and the minutes of CDS meetings. This discovery shall be produced by August 29, 2013.

**D. Discovery Relating to Plaintiff's Allegedly Deficient Charting (RFP No. 30)**

Defendants allege that Plaintiff's charting was deficient. Plaintiff seeks discovery of reviews of Plaintiff's charting by Plaintiff's peers, which she argues will show that Plaintiff's peers positively evaluated her charting practices. RFP No. 30. The only objection pursued by Defendants is their assertion of the peer review privilege. For the reasons stated above, that privilege does not apply. Defendants are ordered to produce the requested discovery by August 29, 2013.

**E. Plaintiff's Patient Evaluations (RFP Nos. 6-7)**

Plaintiff also seeks patient evaluations of her performance. Defendants argue that these scores are not relevant because Plaintiff was not discharged on that basis. The information sought has some relevance to Plaintiff's wrongful termination and breach of contract claims because it could add facts demonstrating that Plaintiff's performance was acceptable and the basis of her termination was based on factors other than her job performance. Although the relevance may be somewhat attenuated, this is a discrete category of documents that is not burdensome to produce. Accordingly, Defendants are ordered to respond to RFP Nos. 6 and 7 by August 29, 2013.

**F. Documents Relating to Release of Medical Records of Patient J.H. (RFP Nos. 18-19)**

Patient J.H. was a patient at the hospital who told another therapist that he wanted to murder Plaintiff. Plaintiff contends that Mr. Shigematsu personally authorized the release of medical records to Patient J.H. in April 2011 despite recommendations from hospital staff that the request should be denied. Plaintiff's RFP Nos. 18 and 19 seek all documents relating to the request made by Patient J.H. for his medical records, and all policies, procedures, and protocols that were in effect in April 2011 which Defendants' employees were expected to follow in response to any request by a patient for his or her medical records. Plaintiff argues that this discovery would be relevant to show that Mr. Shigematsu's release of medical records to Patient J.H. was improper, that Mr. Shigematsu failed to ensure workplace safety by releasing those medical records, and that the release of medical records to Patient J.H. was one way that Mr. Shigematsu retaliated against Plaintiff. Defendants object to this request on the basis of relevance and patient privacy. Again, Plaintiff has sufficiently explained how the requested discovery could be relevant, and Defendants have not explained why production of the discovery pursuant to the protective order would be insufficient to protect Patient J.H.'s privacy, especially in light of the apparently hundreds of pages of his medical records that Defendants have already produced. Accordingly, the information requested in RFP Nos. 18-19 is discoverable.

It was unclear at the hearing whether Defendants had already produced documents relevant to these requests. The parties are directed to meet and confer. Any responsive documents must be produced by August 29, 2013.

### III. CONCLUSION

Plaintiff has established that each of her requests is relevant, and that the responsive documents are not subject to a cognizable claim of privilege. Plaintiff's requests are drafted in a manner that is narrowly and appropriately tailored to the disputes at issue, and do not appear to be a fishing expedition or to create an undue burden on Defendants. Plaintiff's motion is granted.

IT IS SO ORDERED.

Dated: August 15, 2013

DONNA M. RYU
United States Magistrate Judge