UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LOVE,<br><br>    Plaintiff,<br><br>    v.<br><br>PERMANENTE MEDICAL GROUP, et al.,<br><br>    Defendants. | Case No. 12-cv-05679-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISQUALIFY**<br><br>Re: Dkt. No. 61 |

**INTRODUCTION**

This is a wrongful termination suit. Defendants The Permanente Medical Group, Inc. ("TPMG"), Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan, Inc., ("defendants") and non-party Kenneth Shigematsu (collectively, "movants"), a manager at TPMG, move to disqualify plaintiffs' counsel Stephen Schear of the Law Office of Stephen Schear due to his representation of and consultation for Shigematsu in a separate matter in 2003. They also move to disqualify Justice First, LLP ("Justice First"), because it is co-counsel with Schear for Love. Based on the parties' briefs and argument, and for the reasons below, the Motion to Disqualify is GRANTED IN PART AND DENIED IN PART.

**FACTUAL BACKGROUND**

**I.    THE CURRENT CASE**

Non-party Kenneth Shigematsu is a licensed clinical social worker at TPMG and is currently the Director of Psychiatry for the Kaiser South San Francisco Psychiatry Department, with managerial responsibility for all non-physician staff in the department and oversight of all mental health providers at the center; he has worked for TPMG since 1997. Shigematsu Decl. ¶ 1. He directly supervises the manager of Chemical Dependency Services ("CDS") unit and has

1    overall responsibility for CDS's staff.

2        Plaintiff Robin Love worked as a clinical licensed social worker at CDS from September
3    2008 until her termination on May 3, 2012, though she worked in another TPMG unit since March
4    2008. FAC ¶ 1; Shigematsu Decl. ¶ 3; Love Decl. ¶ 7. Prior to transferring to CDS, Love "heard
5    a lot of negative comments about [Shigematsu] and his management" and was told that he "was
6    very difficult to work with and that his management style contributed to making Adult Psychiatric
7    a very unhealthy environment in which to work." Love Decl. ¶ 8. Nonetheless, she applied to
8    transfer there because of "very positive things" she had heard about the then-manager of CDS.
9    Love Decl. ¶ 11. For about three months in early 2011, Shigematsu assumed the responsibilities
10   of manager of CDS and "directly reviewed" Love's work. Shigematsu Decl. ¶ 3.

11       Love alleges that on February 11, 2011, another therapist, Tanya Wiser, warned her that
12   one of Wiser's patients, J.H., said that he wanted to "murder Robin Love." FAC ¶ 16. Love
13   alleges that she asked the defendants to obtain a restraining order against J.H. for her safety, but
14   they refused. FAC ¶¶ 17-19, 22. Love pursued her request, but Shigematsu "demanded" that
15   Love "let it go." Love Decl. ¶ 16. Because she has "had numerous other personal interactions
16   with Mr. Shigematsu regarding matters that are the basis of this lawsuit," such as his "failure to
17   properly respond when [she] informed him about the death threat" and his "failure to comply with
18   Kaiser's policies on workplace safety," she "complained about Mr. Shigematsu to various
19   managers." Love Decl. ¶¶ 15, 21. After her complaint, Love alleges that Shigematsu retaliated
20   against her by bringing false disciplinary charges against her, subjecting her to unlawful corrective
21   action, and then dismissing her without just cause. Love Decl. ¶ 20; FAC ¶¶ 28, 31, 32, 34. Love
22   then brought this suit. However, Love does not seek any damages or other relief from
23   Shigematsu. Love Decl. ¶ 31.

24   **II.    SCHEAR'S RELATIONSHIP WITH SHIGEMATSU**

25       In 2003, Shigematsu retained Schear to assist him with "employment concerns" and a
26   "proposed reorganization of the Psychiatry Department of Kaiser South San Francisco [Medical
27   Center]," where Shigematsu was then a psychologist manager. Br. 1; Shigematsu Decl. ¶ 4.
28   Schear "specialize[s] in representing whistleblower healthcare providers who have suffered

retaliation by large private healthcare corporations." Schear Decl. ¶ 5.

Shigematsu talked with Schear about 13 times over six months in 2003. Shigematsu Decl. ¶ 4. Shigematsu also has four invoices reflecting Schear's billing for services to Shigematsu from January 24, 2003, to July 16, 2003. Shigematsu Decl. ¶ 4; Dkt. No. 70 Exs. 16-20. Shigematsu ultimately did not file any lawsuit or administrative claim and resolved his concerns informally with TPMG. Shigematsu Decl. ¶ 4.

When the defendants' attorneys prepared Shigematsu for his May 29, 2013, deposition in this case, he told them that that he had retained Schear in the past. Schear had not sought Shigematsu's consent to represent Love. Love's counsel noted the potential conflict of interest to Love's counsel at the start of the deposition, where Schear was present, and met and conferred for a month thereafter to try to resolve the issue. Rosenberg-Wohl Decl. ¶ 3; Palley Decl. ¶¶ 3-4, Exs. 5-10. While asserting that he did not remember anything about the case, Schear acknowledged that Shigematsu had paid him $1,145.50 for his services. Palley Decl. Ex. 5.

Shigematsu is a primary target of plaintiff's case. He says that he is "concerned that Mr. Schear may intentionally or inadvertently use confidential information that he learned during his representation of me in his representation of Ms. Love in this lawsuit . . . [f]or example . . . confidential information . . . about my job performance, complaints about me, the department's reorganization, problems or concerns that I had with my managers or employees." Shigematsu Decl. ¶ 8. Shigematsu asserts that Love claims that he has a history of retaliating against employees and making unfounded complaints about them. Shigematsu Decl. ¶ 5. She allegedly claims that many employees have complained about Shigemitsu's performance and behavior, and that he has been disciplined many times. Shigematsu Decl. ¶¶ 5, 6; Br. 5 (citations omitted). Shigematsu is "offended" by Schear's representation of Love and objects to Justice First's representation of Love without his consent. Shigematsu Decl. ¶ 8.

Jenny Huang of Justice First is Love's lead counsel. Schear and Huang have worked together on cases in the past, and Schear has rented office space to her, which is how they first met. Schear Decl. ¶ 9. He says that "[a]t the time Ms. Huang informed me about this case, I did not remember that I had once consulted with Mr. Shigamatsu [sic]," nor did he recognize or

remember Shigematsu at Shigematsu's deposition. Schear Decl. ¶¶ 20-22. After the deposition, Schear searched his computer files and bookkeeping records for information related to Shigematsu and only found that he received $1,145.50 from Shigematsu in 2003. Schear Decl. ¶ 2003. However, Schear did not search his paper archive and will not do so without a court order "in order to avoid any possible exposure to confidential information concerning Mr. Shigamatsu [sic]." Schear Decl. ¶ 25. Schear claims that he still has no memory of Shigematsu or any communications with him and, thus, he is literally unable to share any confidential information with Huang about Shigematsu. Schear Decl. ¶¶ 29, 31. Nonetheless, he says that since he was informed about his prior work for Shigematsu on May 29, 2013, he has not spoken with Huang except with regard to the pending motion to disqualify. Schear Decl. ¶ 39.

Huang states that she never knew about Schear's prior representation of Shigematsu until Shigematsu's deposition, nor did she receive confidential information about him. Huang Decl. ¶¶ 14-15. Love asserts that her attorneys have never shared any information with her about Schear's prior representation of Shigematsu. Love Decl. ¶ 33.

## PROCEDURAL HISTORY

Love filed this suit on November 5, 2012. Dkt. No. 1. On April 5, 2013, the Honorable Yvonne Gonzales Rogers granted with leave to amend the first and fifth causes of action. Dkt. No. 25. On April 30, 2013, Love filed an amended complaint, which is the subject of a motion to dismiss and motion to strike pending before the Court. Dkt. Nos. 32, 37. On July 12, 2013, the defendants and Shigematsu filed this Motion to Disqualify.

## LEGAL STANDARD

District courts have inherent authority to disqualify counsel. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996). Civil Local Rule 11-4(a)(1) mandates that every attorney who appears before this Court "comply with the standards of professional conduct required of the members of the State Bar of California." CIVIL L.R. 11-4(a)(1). Accordingly, this Court applies California law to determine whether Love's counsel should be disqualified. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

California Rule of Professional Conduct 3-310(E) applies to this matter: "A member shall

4

not, without the informed consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." "[I]t is a violation of that duty for him to assume a position adverse or antagonistic to [that] client without the latter's free and intelligent consent." *Flatt v. Super. Ct. of Sonoma Cnty.*, 9 Cal. 4th 275, 289 (1994).

In addition, "[b]ecause of their susceptibility to tactical abuse, [m]otions to disqualify counsel are strongly disfavored" and "should be subjected to particularly strict judicial scrutiny." *Oracle Am., Inc. v. Innovative Tech. Distrib., LLC*, 11-CV-01043-LHK, 2011 WL 2940313, at *4 (N.D. Cal. July 20, 2011) (quotation marks omitted). Courts must be cognizant of the "substantial hardship" and the "monetary and other costs of finding a replacement" on parties whose counsel is disqualified. *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300 (1989).

## DISCUSSION

This case presents an unusual situation in which one side seeks to disqualify the other side's attorney because that attorney previously worked for the moving party's employee, who is not a party to this case. The Court is unaware of, and the parties have not identified, any cases directly on point. However, because Shigematsu is now the primary target in a wrongful termination case in which his former employment lawyer is adverse to him, the precedent in successive representation cases demonstrates that the defendants and Shigematsu have met their burden of showing that disqualifying Schear is warranted. Since there is no evidence or reason to believe that Schear passed confidential information on to Justice First, disqualifying Justice First is not warranted.

### I. SCHEAR IS DISQUALIFIED.

"It is beyond dispute [that] a court may disqualify an attorney from representing a client with interests adverse to those of a former client." *H. F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1451 (Ct. App. 1991) (citation omitted). "Disqualification in cases of successive representation is based on the prohibition against employment adverse to a former client where, by reason of the representation of the former client, the attorney has obtained confidential information material to the employment." *Id.* (quotation marks, brackets, and

ellipses omitted). Disqualification is automatic if the client does not consent, and "[t]he court does not engage in a 'balancing of equities' between the former and current clients." *Id.* The former client bears the burden of proving that disqualification is warranted. *Id.* at 1452.

Actual possession of the former client's confidential information is sufficient to warrant disqualification, but there is no need to prove actual possession of confidential information because "it is not within the power of the former client to prove what is in the mind of the attorney." *Id.*; *Global Van Lines, Inc. v. Super. Ct. of Orange Cnty.*, 144 Cal. App. 3d 483, 489 (Ct. App. 1983). Rather, all that is necessary is that "a substantial relationship has been shown to exist between the former representation and the current representation." *Id.* The "substantial relationship" test requires examining the "similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases. As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." *H. F. Ahmanson*, 229 Cal. App. 3d at 1455.

Whether the facts or legal questions are similar depend on whether they are "material." *Jessen v. Hartford Cas. Ins. Co.*, 3 Cal. Rptr. 3d 877, 888 (Ct. App. 2003). For information to be material, "it must be found to be directly at issue in, or have some critical importance to, the second representation." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680 (2004). Here, the movants do not allege that "any relevant confidences were in fact revealed." *H. F. Ahmanson*, 229 Cal. App. 3d at 1459. Thus, the Court applies the substantial relationship test.

The movants adequately show that the factual and legal issues in Schear's consultation of Shigematsu are substantially related to the issues here. The movants allege that Shigematsu sought out Schear because his boss "was taking away his supervisor duties . . . [and] was retaliating against him by making him report to another physician whom Shigematsu had filed a complaint . . . [because of] his taking a vacation, his concerns over union involvement in management, or his differences with other managers over duties." Reply 3 (citations omitted). Shigematsu claimed that there was "evidence of retaliation and hostility towards me and that I was afraid for my safety," and that he "stated concerns about subordinates' patient care." Reply 3.

Shigematsu also consulted Schear concerning "a dispute about a management reorganization of the Psychiatry Department of Kaiser South San Francisco Medical Center." Br. 1, 10. Shigematsu's concerns about retaliation from his supervisor is supported by Schear's own billing records stating that he "research[ed a] retaliation statute" for Shigematsu's case. Dkt. No. 70, Ex. 16. Shigematsu's declaration in support of the Motion to Disqualify states that he sought out Schear "to assist me in pursuing my concerns with TPMG." Shigematsu Decl. ¶ 4.

Although Shigematsu is not a defendant in this action, the movants argue that "plaintiff has focused on the alleged conduct" of Shigematsu, making him "her main target," and identifies Shigematsu "as her main antagonist." Rosenberg-Wohl Decl. ¶ 2; Br. 13. The movants point out that "Love seeks to discover Shigematsu's personnel file, any complaints against him, and any Quality concerns either about him or submitted by him." Br. 13. "While not suing [Shigematsu] personally, Love has sued his employer, TPMG, on whose behalf Shigematsu let her go. She accuses him of professional misconduct. . . ." Br. 15. They state that "[s]he admits that she is now seeking his personnel records to show a pattern of retaliatory conduct . . . ." Reply 1.

The matters about which Shigematsu consulted Schear have "critical importance to" this case, and thus they are substantially related. If Shigematsu sought out Schear's counsel on workplace matters and retaliation issues, Shigematsu likely would have disclosed to Schear information about his behavior, character, and thoughts. Shigematsu would have explored arguments and defenses that are likely to arise in an employment retaliation suit he might bring, such as what complaints others might have had about him or how he and others perceived his job performance. Shigematsu states that Schear learned "confidential information . . . about my job performance, complaints about me, the department's reorganization, problems or concerns that I had with my managers or employees"—information that could support Love's case against the defendants. Shigematsu Decl. ¶ 8. Indeed, Love has sought Shigematsu's records through discovery to corroborate her claims that Shigematsu and the defendants were hostile towards and retaliated against her.

The law requires that there be a substantial relationship between Schear's prior representation and his current one. The confidences that Shigematsu would have to share with his

attorney in exploring whether and why he may have been the subject of workplace retaliation, as well as how he might bring suit and counter any response, is information that is relevant and material to the issues in this case. Because Shigematsu informally resolved his issues with TPMG, it is very likely that Schear had "possible exposure to formulation of policy or strategy" in doing so. *H. F. Ahmanson*, 229 Cal. App. 3d at 1455. The defendants in this case, Shigematsu's employer, are the very ones Shigematsu was concerned about in 2003. Schear's credibility in claiming that he has no memory of Shigematsu or any matters related to him is not at issue here. The Court cannot allow the possibility that Shigematsu's confidential information may resurface. There is a substantial relationship between the prior and current representations and Schear must be disqualified.

Love argues that the movants have not shown how Shigematsu's "employment concerns" 10 years ago are similar to this case. Opp'n 14. While defendants state that Love is seeking information about complaints or disciplinary actions against Shigematsu, Love points to the fact that Shigematsu testified at his deposition that he has never been subjected to discipline or retaliation complaints. Opp'n 14. If Shigematsu testified truthfully, Love argues, then it is "impossible for Mr. Schear ever to have learned confidential information from Mr. Shigematsu about complaints made against [him] in 2003, since Mr. Shigematsu was not aware of any." Opp'n 14.

The mere fact that no formal complaints were ever filed against, or discipline imposed upon, Shigematsu does not mean that Shigematsu never revealed to Schear potential complaints that he thought could be brought against him. Or that he did not share with Schear potential areas of vulnerability that could be exploited in litigation. Shigematsu's credibility is at issue in this case, and the law protects him from being attacked with confidential information he provided to his former lawyer.

Love also argues that Schear should not be disqualified because he has no memory about his representation of Shigematsu. However, as discussed above, the disqualification rule is intended to prevent inquiry into the mind of the challenged attorney. If Schear suddenly remembered confidential information about Shigematsu, it would be impossible for the movants to

prove it. Indeed, Schear allows for the possibility that his memory may be refreshed if he ever saw documents related to his earlier representation. *See* Schear Decl. ¶ 25. Disqualification prevents this.

A "distinct fundamental value of our legal system is the attorney's obligation of loyalty." *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 86 Cal. Rptr. 2d. 816, 824 (Ct. App. 1999). While there is no evidence that Schear has acted unethically or disloyally in this case, Shigematsu and the movants have adequately shown that the values underlying attorney-disqualification might be compromised if Schear continues representing Love.[1] The risk of revealing Shigematsu's confidential information is substantial, and Shigematsu has a right to be secure in his confidences when he entrusts them to an attorney. The Motion to Dismiss Schear is GRANTED.

## II. JUSTICE FIRST IS NOT DISQUALIFIED.

"[D]isqualification of one firm does not automatically compel disqualification of the firm's co-counsel." *In re Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, 501 (N.D. Cal. 1979). Indeed, "courts have declined disqualifying counsel even when the conflicted co-counsel did in fact have confidential information but never shared it with the counsel being challenged." *FlatWorld Interactives LLC v. Apple Inc.*, 12-cv-01956-WHO, 2013 WL 4039799, at *9 (N.D. Cal. Aug. 7, 2013). Such courts have found disqualification unwarranted if there was "no evidence that [the attorney] shared any confidential information." *Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*, 11-cv-05535-WHA, 2012 WL 847493, at *2 (N.D. Cal. March 13, 2012).

Here, there is no evidence that Justice First received any confidential information about Shigematsu through Schear. Schear's law office and Justice First are different firms and do not have access to each other's records. Schear Decl. ¶¶ 15-18. And Schear has credibly represented that, to date, he cannot recall *any* information related to his representation of Shigematsu and thus has no information that he could give to Justice First. Without a showing that confidential

---

[1] That said, Schear's failure to perform a conflict check at the outset of this litigation falls below the standard one would expect in this day and age.

1 information was passed on to it, Justice First need not be vicariously disqualified.

2 Moreover, California courts have held that a court ruling on a motion to disqualify may
3 consider whether disqualification "imposes a substantial hardship" or a "financial burden on a
4 client to replace disqualified counsel." *SpeeDee Oil*, 86 Cal. Rptr. 2d. at 823. Here, the Court
5 finds that disqualifying Justice First would prejudice and impose a significant hardship on Love.
6 This case has undergone significant discovery and motion practice. Disqualifying both of Love's
7 counsel would clearly prejudice Love by imposing a substantial hardship upon her due to the
8 replication of expended efforts and the delay disqualification would cause. The movants have not
9 met their burden of establishing that disqualifying Justice First is warranted.

## CONCLUSION

Because the defendants and Shigematsu have shown that the factual and legal issues from Schear's prior relationship with Shigematsu are substantially related to the ones in this case, the Motion to Disqualify Schear is GRANTED. However, because there is no evidence that Schear shared confidential information about Shigematsu with Justice First and disqualifying Justice First would prejudice Love, the Motion to Disqualify Justice First is DENIED.

At the case management conference after the hearing on this Motion, the Court indicated that it was willing to adjust the case management deadlines in place in this case if the Motion was granted. Accordingly, the parties are ORDERED to meet and confer and, if desired, to propose a revised schedule to the Court within 30 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 18, 2013



WILLIAM H. ORRICK
United States District Judge