UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN LOVE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE PERMANENTE MEDICAL GROUP, et al.,<br><br>　　　　Defendants. | Case No. 12-cv-05679-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 115 |

Plaintiff Robin Love brings this wrongful termination action against her former employer, defendants The Permanente Medical Group, Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan (collectively, "defendants" or "Kaiser") for allegedly retaliating against her after she reported workplace safety issues. Love's Second Amended Complaint ("SAC") alleges eight causes of action: (1) retaliation in violation of California's Whistleblower Protections Act, CAL. HEALTH & SAFETY CODE § 1278.5; (2) discrimination in violation of CALIFORNIA LABOR CODE §6310; (3) wrongful termination in violation of public policy; (4) breach of contract; (5) wrongful termination of hospital privileges; (6) intentional infliction of emotional distress; (7) violation of right to fair procedure under CAL. BUS. & PROF. CODE § 805; and (8) injunctive relief.

The defendants have moved to dismiss the First and Fourth Causes of Action, and to strike references in the SAC to CAL. HEALTH & SAFETY CODE § 1278.5 and other allegations. For the reasons below, the Motion to Dismiss the First and Fourth Causes of Action is GRANTED WITH PREJUDICE. The Motion to Strike is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

For purposes of the Motion to Dismiss, the Court accepts as true the following factual allegations in the SAC.

Plaintiff Robin Love worked as a licensed clinical social worker for the Division of

Chemical Dependency in Kaiser's South San Francisco facility. In February 2011, one of Love's patients, J.H., told another therapist that he wanted to "murder Robin Love." SAC ¶ 1. For months, Love requested that Kaiser obtain a restraining order on her behalf to protect her against that patient, but Kaiser did not obtain a restraining order. SAC ¶¶ 17-20. In her efforts to obtain a restraining order against Patient J.H., Love repeatedly complained about Kaiser-Permanente's failure to provide a safe environment. SAC ¶ 20, 39-41. Love claims that the restraining order "would have protected her, other employees, and other patients by requiring Patient J.H. to stay away" from Kaiser facilities. SAC ¶ 22. When J.H. requested copies of his medical records, including Love's notes in his record, Love informed her supervisor, Kenneth Shigematsu, that she believed the release of her notes "would be contrary to the patient's mental health and workplace safety." SAC ¶ 26, 28. Kaiser released the notes to J.H. SAC ¶ 29. Love complained to Kaiser managers about Shigematsu's release of the medical records. SAC ¶ 41. 25. Love also complained about the treatment of another patient, J.T., who was sent by Kaiser's Adult Psychiatry unit to an involuntary four-day psychiatric commitment. SAC ¶ 35-36, 42.

In June 2011, Shigematsu initiated disciplinary proceedings against Love for her alleged poor clinical care of patients J.H. and J.T., and she was placed on "chart review" for one year. SAC ¶¶ 43-46. In February 2012, Shigematsu allegedly made disciplinary charges against Love relating to other patient care issues. SAC ¶ 47. On April 11, 2012, Kaiser placed Love on administrative leave. SAC ¶ 48. On May 3, 2012, Love was terminated. SAC ¶ 49.

Love's employment was governed by a collective bargaining agreement ("CBA") between Kaiser and the Service Employees International Union ("SEIU") from March 24, 2008, until November 18, 2010 ("SEIU CBA"). SAC ¶ 86. Under this agreement, an employee is subject to discharge only for "just cause." SAC ¶ 86; Declaration of Alan Burnett in Support of Defendants' Motion to Dismiss ("Burnett Decl."), Ex. A at 30. If an employee believes that she has been discharged improperly, she may submit the issue to the grievance procedure established by the agreement. Burnett Decl. Ex A at 34-37. The procedure includes three possible levels of mediation and then arbitration. *Id.* On November 18, 2010, the SEIU CBA expired, and the National Union of Healthcare Workers ("NUHW") became Love's union representative. SAC ¶

86. Love alleges that although the SEIU CBA expired, the requirement that she be terminated for "just cause" is still applicable to her claims. SAC ¶ 86.

Love exhausted her administrative remedies by filing grievances to challenge Kaiser's disciplinary actions. SAC ¶¶ 62-63. NUHW participated in the grievance procedures with Love. SAC ¶ 89. When Love was put on chart review, her union representative requested that Kaiser "cease and desist" the disciplinary action because it allegedly violated the terms of the CBA. SAC ¶ 45. Love's grievances were denied and she requested arbitration, but she was informed that arbitration was no longer available to employees in her bargaining unit. SAC ¶ 64, 91.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." Id. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## REQUESTS FOR JUDICIAL NOTICE

Defendants have filed a request for judicial notice of the SEIU CBA and the fact that on

1  November 18, 2010 the CBA expired when NUHW replaced the SEIU as union representative.
2  Dkt. No. 118. Pursuant to Federal Rule of Evidence 201, documents alleged in a complaint and
3  essential to a plaintiff's allegations may be judicially noticed. *Steckman v. Hart Brewing, Inc*. 143
4  F.3d 1293, 1295 (9th Cir. 1998). "Although generally the scope of review on a motion to dismiss
5  for failure to state a claim is limited to the Complaint, a court may consider evidence on which the
6  complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is
7  central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to
8  the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)
9  (internal quotation marks and citation omitted). The court may "treat such a document as part of
10 the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss
11 under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

12 Love has not opposed taking judicial notice of the SEIU CBA and admits that it expired on
13 November 18, 2010. SAC ¶ 86. Because the SAC's allegations rely on the SEIU CBA and no
14 party questions its authenticity, judicial notice is proper. Accordingly, the Court GRANTS
15 defendants' request for judicial notice.

16 Love has also filed a request for judicial notice of several documents pertaining to a
17 previous case filed by Love's counsel against the defendants. Dkt. No. 130. The request was filed
18 late. However, having considered the request, the Court finds that judicial notice of the attached
19 documents is not needed for resolution of the Motion to Dismiss. Love's request for judicial
20 notice is therefore DENIED.

## DISCUSSION

### I. FIRST CAUSE OF ACTION: RETALIATION IN VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE § 1278.5

24 This is Love's third attempt to plead a cause of action under CAL. HEALTH & SAFETY CODE
25 § 1278.5. Love filed this case on November 5, 2012. On April 5, 2013, the Honorable Yvonne
26 Gonzalez Rogers granted the defendants' first motion to dismiss the First Cause of Action with
27 leave to amend, finding that Love's complaints were about Kaiser's failure to protect her rather
28 than hospital care and conditions, and therefore her conduct was not protected "whistleblower

activity" under the statute. Dkt. No. 25. On April 30, 2013, Plaintiff filed a first amended complaint, and on May 24, 2013, defendants filed a second motion to dismiss. Dkt. Nos. 32, 38. This Court found that Love's complaints as pleaded in the first amended complaint continued to pertain to "Kaiser's failure to protect *her*," and that "[w]hile Love alleges that her complaints related to unsafe conditions and patient safety, she provides no facts to support this assertion." Dkt. No. 104 at 5 (emphasis in original) (quotation marks omitted). Accordingly, the Court again dismissed the First Cause of Action with leave to amend.

Love has still not alleged sufficient facts in the SAC that her complaints are protected whistleblower activities under California Health and Safety Code § 1278.5. The statute prohibits any healthcare facility from retaliating against an employee because the employee has presented a complaint or report concerning the quality of care, services, or conditions at the facility. Specifically:

> No health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person has . . . initiated, participated, or cooperated in an investigation or administrative proceeding related to, the quality of care, services, or conditions at the facility that is carried out by an entity or agency responsible for accrediting or evaluating the facility or its medical staff, or governmental entity.

CAL. HEALTH & SAFETY CODE § 1278.5(b).

Love alleges that she complained about Kaiser's failure to obtain a restraining order against patient J.H. and the release of her notes to J.H. SAC ¶¶ 17-22, 35-36, 39-41. Love alleges that she complained to managers that the restraining order "would have protected her, other employees, and other patients by requiring Patient J.H. to stay away" from Kaiser facilities, and that she believed the release of her notes "would be contrary to the patient's mental health and workplace safety." SAC ¶ 22, 26, 28. Love's counsel admitted at oral argument that these complaints pertained to Love's *own* safety, but asked the Court to infer that the complaints related to the safety of others at the hospital. Yet counsel provided no facts to support this assertion, and the SAC does not allege sufficient facts showing that the complaints related to patient care, services, or hospital conditions. Accordingly, Love's complaints regarding patient J.H. do not

qualify as whistleblower activities under California Health and Safety Code section 1278.5.

The SAC also alleges that "[f]rom March 2011 to September 2011 and in subsequent proceedings thereafter, Ms. Love complained to numerous managers, quality review, and other investigators about the improper involuntary psychiatric commitment of patient J.T." SAC ¶ 42. The SAC does not allege any facts regarding what these complaints were about, and fails to allege how or if the complaints related to issues concerning the quality of care and conditions at the hospital. To the extent the complaints were made after disciplinary actions were initiated against Love or in "subsequent proceedings thereafter," they cannot be the basis of a retaliation claim.

The Court finds that Love has still failed to allege that her complaints fall within the protection of section 1278.5. Because this is Love's third attempt to adequately plead this cause of action, the Court finds that further attempt to amend the allegations would be futile. Accordingly, the First Cause of Action is DISMISSED WITH PREJUDICE.

## II. FOURTH CAUSE OF ACTION: BREACH OF CONTRACT

Love alleges that Kaiser breached the SEIU CBA by terminating her without just cause. SAC ¶¶ 86-89. The defendants assert that the SEIU CBA expired before the events that give rise to Love's causes of action, and therefore its contractual provisions do not apply to her claims. Defendants' Motion for Summary Judgment ("Mtn.") at 5. The defendants further contend that even if the CBA had not expired, Love may not sue Kaiser for breach of the SEIU CBA because she has not claimed that her union breached its duty of fair representation, which is a prerequisite to suing her employer directly. *Id*. at 4-6. The Court agrees with defendants on both arguments.

### A. Love Has Not Sufficiently Pled That the "Just Cause" Provision Survived the SEIU CBA's Expiration

"As a general rule, where the [CBA] at issue has expired, the parties are released . . . from their respective contractual obligations and any dispute between them cannot be said to arise under the contract." *Alday v. Raytheon Co*., 693 F.3d 772, 784-85 (9th Cir. 2012) (citation omitted). However, a "post-expiration grievance can be said to arise under" an expired CBA where it (1) involves facts and occurrences that arose before expiration; (2) where an action taken after expiration infringes a right that accrued or vested under the agreement; or (3) where, under normal

6

principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205-206 (1991).

All of the facts leading to Love's termination arose after the November 18, 2010 expiration of the SEIU CBA, when Love first learned that J.H. made a death threat against her on February 11, 2011. SAC ¶ 16. Love does not allege that the right to be terminated without just cause vested under the agreement, or that such a right survived the SEIU CBA under normal principles of contract interpretation. Courts have determined that the right to be discharged for just cause is not a right that accrues or vests under an agreement, unlike benefits such as severance pay, vacation pay, life insurance coverage, or pension plan rights. *See Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc*., 795 F.2d 1400, 1404 (8th Cir. 1986). The right to be terminated for just cause "is strictly a creature of the collective bargaining agreement and its life as a matter of contract does not extend beyond contract expiration." *Id*. Accordingly, Love has not sufficiently pled that the "just cause" provision of the SEIU CBA applies to her grievances.

### B. Love's Section 301 Claim Fails Because She Has No Claim Against Her Union

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et. seq*., "provides a statutory mechanism for vindicating contract rights under a collective bargaining agreement." *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 985 (9th Cir. 2007). The general rule is that only unions can litigate violations of labor agreements, and it is an exception for individuals to have standing to allege breach of a CBA under section 301 of the LMRA. *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 511 (9th Cir. 1978). When the CBA provides exclusive grievance and arbitration procedures, an employee is required to exhaust those procedures and is bound by the results of that process.[1] *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983). Thus, "[n]ormally, no judicial remedy lies--the grievance procedure

---

[1] The language of the SEIU CBA indicates that its grievance procedures are contractually mandated and the exclusive means for settling disputes concerning the CBA. Burnett Decl. Ex A at 34 ("The following procedure shall be applied and relied upon by parties" as the means of settling grievances for "every dispute concerning interpretation or application of this contract and/or any dispute concerning wages, hours, or working conditions. All such disputes shall be subject to the grievance procedures.").

7

under the CBA is the sole remedy." *Grotz v. Kaiser Found. Hospitals*, No. 12-3539, 2012 WL 5350254 at *5 (N.D. Cal. Oct. 29, 2012).

However, when a union has breached its duty of fair representation during the grievance process, courts have held that it would work an "unacceptable injustice" for an employee to be bound by its outcome. *DelCostello*, 462 U.S. at 164. In such cases, the employee "must prove that the union breached its duty of fair representation before proceeding with a § 301 suit against the employer." *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057 (9th Cir. 1989). These claims may be brought in a "hybrid" action, which requires the employee to show both that the union breached its duty of fair representation and that the employer breached the CBA in order to prevail against the employer. *Soremekun*, 509 F.3d at 987. *See also Waldron v. Boeing Co.*, 388 F.3d 591, 594 (8th Cir. 2004) ("If an employee does not agree with the results reached through the procedures of the CBA, the employee, in order to bring an individual suit directly against the employer for breach of the CBA, must allege and prove the union breached its duty of fair representation"); *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1124 (7th Cir. 1998) ("When an employee seeks to bring a § 301 suit against his employer, he must allege a hybrid cause of action-first a claim of breach of fair representation against the union and then a § 301 cause of action against the employer"); *Johnson v. United States Postal Service*, 756 F.2d 1461, 1467 (9th Cir. 1985) ("[A] cause of action for breach of a collective bargaining agreement may not be maintained if the union provided fair representation.").

Love filed grievances to challenge Kaiser's disciplinary actions and her union representative, NUHW, participated in the grievance procedures. SAC ¶¶ 45, 62-64, 89. The SAC does not allege that Love's union breached its duty of fair representation in handling her grievances, and there is no allegation that the union otherwise acted improperly. At oral argument, Love's counsel admitted that Love has no claim against her union. Accordingly, even if the CBA was in effect, she could not bring a claim in this Court under the LMRA. The breach of contract claim under section 301 of the LMRA is DISMISSED with PREJUDICE.[2]

---

[2] Love asserts that she needs further discovery to determine whether the terms of the SEIU CBA expired. This request is futile because even if the SEIU CBA has not expired, Love cannot sue

### III. REMAINING STATE LAW CLAIMS

The defendants asked that this case be remanded to state court if the Court dismisses the LMRA section 301 cause of action, which is the only one on which federal jurisdiction was based. However, this Court will exercise supplemental jurisdiction under 28 U.S.C. § 1367. In light of the advanced stage of these proceedings, it will be more efficient, speedier, and less costly for the parties to remain in this Court.[3]

### IV. MOTION TO STRIKE

Defendants have also moved to strike various parts of the SAC under Federal Rule of Civil Procedure 12(f), which allows the Court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. FED. R. CIV. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and alteration omitted). Motions to strike, however, "are generally disfavored by courts because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). Such motions should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *New York City Employees' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009). "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *Id.* (citation and quotation marks omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No.

---

Kaiser directly without a claim against her union, which she has admitted that she does not have.
[3] Love asserts that the Court should assert jurisdiction on collateral estoppel grounds based on the outcome of a previous case before the Court that Love's counsel filed against Kaiser. Opp. at 8-11. It is hard to imagine how collateral estoppel would apply from a ruling in a different case involving different parties, and it clearly does not apply when in the other case the parties agreed in a discovery hearing to stop pursuing jurisdictional discovery and litigate the case in federal court. *See Wright v. Kaiser et al.*, No. 12-00663 (N.D. Cal 2012), Transcript of Proceeding Held on September 4, 2012, ECF. No. 51 at 19-20.

12–00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

Since pleadings generally are not seen by the jury in federal court, the Court sees no need to strike the allegations identified by defendants except with respect to the "bribe" because, although a literal quotation, it mischaracterizes the comment in the email to Kaiser security guards and appears misleading, irrelevant, impertinent and scandalous. *See* Declaration of Jenny Huang in Opposition to Defendants' Motion to Dismiss, Ex. 5. The Court GRANTS the Motion to Strike the words "as a self-declared bribe" in paragraph 52. As to the remaining allegations, the Motion to Strike is DENIED.

## CONCLUSION

For the reasons discussed above, the Motion to Dismiss the First and Fourth Causes of Action is GRANTED with PREJUDICE. The Court shall exercise supplemental jurisdiction over the remaining state law claims. The defendants' Motion to Strike is GRANTED IN PART and DENIED IN PART as set forth in section IV.

**IT IS SO ORDERED**.

Dated: December 13, 2013

WILLIAM H. ORRICK
United States District Judge