**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10

11   ROBIN LOVE,                                No. C-12-05679 DMR

12            Plaintiff(s),                     **ORDER RE: DISCOVERY LETTER**
                                                **[DOCKET NO. 184]**
13       v.

14   THE PERMANENTE MEDICAL GROUP,

15            Defendant(s).
     _____/

16

17         Plaintiff Robin Love and Defendants The Permanente Medical Group ("TPMG"), Kaiser

18   Foundation Hospitals ("KFH"), and Kaiser Foundation Health Plan ("Health Plan") (collectively,

19   "Defendants") filed a joint discovery letter regarding Plaintiff's request for production of

20   information redacted from a document produced by Defendants on the basis of attorney-client

21   privilege.  [Docket No. 184.]  This matter is appropriate for determination without oral argument.

22   Civil L.R. 7-1(b).  Plaintiff's motion is **granted**.

23                                **I.  BACKGROUND**

24         This court has summarized the factual background of this case in previous orders, as has

25   Judge Orrick.  *See* Docket Nos. 182, 154, 136.  Before the court now is a dispute about a document

26   produced by Defendants in response to Plaintiff's Third Set of Document Requests, which are

27   minutes from a Credentials and Privileges Committee ("CPC") meeting that occurred in February or

28

United States District Court

For the Northern District of California

March of 2012[1] (TPMG 3826-3832).  The meeting minutes as produced by Defendants were redacted; most redactions are for "third-party privilege," but Defendants also made one redaction on the basis of attorney-client privilege.  *See* TPMG 3828.

Defendants' privilege log states that the redaction was an attorney-client communication on March 2, 2012, between Frank Beirne, John Skerry, and Andrea Resnick, hospital legal counsel, regarding an inquiry about the monitoring of Plaintiff's hospital privileges.  Resnick was not present at the CPC meeting when the communication was shared with the CPC.  Instead, Beirne and Skerry reported at the CPC meeting about their meeting with Resnick.

The meeting notes reflect that the attendees included not only members of the CPC but also five other "guests and staff."  Those attendees are as follows:

- **Andrea Resnick**, an in-house attorney employed by the Health Plan, who "routinely advises employees of Defendants the Health Plan, KFH, and TPMG on legal matters of common interest."  Letter at 3.  Resnick provided the legal advice to Beirne and Skerry that was subsequently transmitted at the CPC meeting;

- **Frank Beirne**, an administrator and manager with KFH, who met with Resnick and Skerry and received Resnick's legal advice.  Beirne is a member of the CPC;

- **Dr. John Skerry**, a physician employed by TPMG.  Skerry is a member of the CPC;

- **Other members of the CPC.**  Twelve other members of the CPC were present at the meeting;

- **Kenneth Shigematsu**, whom Defendants describe as a "guest" at the CPC meeting;

- **Dr. Dawn Belardinelli**, the TPMG chief of pediatrics, whom Defendants also describe as a "guest" who was present "at the [CMC's] request to respond to questions about pediatric credentialing and privileges";

- **Three staff members.**  The CPC meeting minutes also list three "staff" members: Joann Brown, the Accrediting, Regulation, and Licensing Director; Evan Silbert, the Credentialing Administrator; and Donna Parrish, the Credentials and Privileges Supervisor.

## II.  DISCUSSION

**A.  Attorney-Client Privilege**

---

[1]  Defendants provided an unredacted copy of the document for in camera review.  The exact date of this meeting is not clear from the face of the document.

**United States District Court**
For the Northern District of California

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted); *see Vasudevan Software, Inc. v. IBM Corp.*, No. 09-5897-RS (PSG), 2011 WL 1599646, at * 1 (N.D. Cal. Apr. 27, 2011).  The privilege is "narrowly and strictly construed," and the party asserting it bears the burden of proving that it applies.  *Vasudevan Software, Inc.*, 2011 WL 1599646 at *1 (quotation omitted); *accord United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that party asserting privilege "must make a *prima facie* showing" that privilege applies).  The privilege attaches when

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (quotation omitted).  If the advice sought from the professional legal advisor is not legal advice, the privilege does not apply.  *Id.* (citation omitted).  Attorney-client privilege belongs solely with the client, and only he may waive it.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (citations omitted).  Once a client waives the privilege, the waiver applies to "all other communications relating to the same subject matter." *Id.*  (citation and quotation marks omitted); *accord Richey*, 632 F.3d at 566.

**B.   Joint Defense/Common Interest Privilege**

The joint defense or common interest privilege is an extension of the attorney-client privilege that "has been long recognized by this circuit."  *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) (citations omitted).   The privilege "has its origins in situations where one attorney acts for two clients, [but] [i]t has been applied beyond the joint client context to the joint defense context—for instance, when the defendants are co-defendants in the same action or are defendants in separate actions sued by the same plaintiff."  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citing *B.E. Meyers & Co., Inc. v. United States*, 41 Fed. Cl. 729, 733 (1998)).  Generally, under the joint defense privilege, "communications by a client to his own lawyer remain privileged when the lawyer subsequently shares them with co-defendants for purposes of a common defense."  *Waller*, 828 F.2d at 583 (citation omitted).

**United States District Court**
For the Northern District of California

1    In order for the joint defense theory to apply, there need not be actual litigation. *United*

2  *States v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012) ("[A]s parties in separate actions might

3  nonetheless have reasons to work together toward a common objective, and there is no requirement

4  that actual litigation even be in progress.").  Moreover, the joint defense theory can extend to

5  "interested third parties who have a community of interests with respect to the subject matter of the

6  communications." *Nidec*, 249 F.R.D. at 579 (quoting Rice, Attorney-Client Privilege in the United

7  States § 4:35, at 199-201); *see also In re Regents of the Univ. of California,* 101 F.3d 1386, 1390

8  (Fed. Cir. 1996) (noting that the common interest privilege may apply to a patent holder and its

9  licensee).  "No written agreement is required, and . . . a [joint defense agreement] may be implied

10  from conduct and situation, such as attorneys exchanging confidential communications from clients

11  who are or potentially may be codefendants or have common interests in litigation. *Gonzalez*, 669

12  F.3d at 979.  "[H]owever, that legal assistance must pertain to the matter in which the parties have a

13  joint legal interest, and the communication must be designed to further that specific legal interest."

14  *Nidec*, 249 F.R.D. at 579.  Thus a party claiming the common interest privilege bears the burden of

15  showing "(1) the communication is made by separate parties in the course of a matter of common

16  [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not

17  been waived." *Id.* at 578. *See also Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25

18  (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-client

19  privilege applies rests not with the party contesting the privilege, but with the party asserting it.  One

20  of the elements that the asserting party must prove is that it has not waived the privilege.") (citations

21  omitted).

22  **C.  The Redacted Information**

23    The court finds that the information redacted is properly the subject of the attorney-client

24  privilege.  The fact that Skerry and Beirne are employed by different Kaiser entities is of no

25  moment, since Defendants assert (and Plaintiff does not dispute) that Resnick provided legal advice

26  to both TPMG and KFH in her role as the in-house counsel for the Health Plan.  Attorney-client

27  privilege may extend to her communications with Skerry and Beirne by virtue of TPMG and KFH's

28  common legal interest in defending against anticipated litigation against all three entities by

4

United States District Court

For the Northern District of California

1   Plaintiff.  In addition, Skerry and Beirne's communication of Resnick's advice to the CPC may fall

2   within the attorney-client privilege; the mere act of transmitting an attorney's advice to other

3   employees of Defendants does not render that advice unprivileged.  *See Upjohn Co. v. United States*,

4   449 U.S. 383 (1981) (communications between multiple non-management employees and attorneys

5   seeking to render legal advice to the client corporation may be protected by the attorney-client

6   privilege, because "[t]he attorney's advice will also frequently be more significant to noncontrol

7   group . . . employees who will put into effect the client corporation's policy" than to those who

8   officially sanction the advice); *Admiral Ins. Co. v. District Court,* 881 F.2d 1486, 1492 (9th Cir.

9   1989) (in the corporate context, attorney-client privilege "applies to communications by any

10  corporate employee regardless of position when the communications concern matters within the

11  scope of the employee's corporate duties and the employee is aware that the information is being

12  furnished to enable the attorney to provide legal advice to the corporation") (citing *Upjohn,* 449 U.S.

13  at 394); *S.E.C. v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008) (communications between

14  attorneys and special committee within board of directors formed to conduct internal investigation

15  into securities law violations are protected by attorney-client privilege; communications between

16  attorneys and members of the board that are not members of the special committee are not protected

17  by the attorney-client privilege).

18          Nonetheless, the court finds that Defendants waived their assertion of attorney-client

19  privilege over the redacted information when the information provided by Resnick was disclosed at

20  the CPC meeting to individuals other than the CPC members.  Namely, the disclosure of the

21  information to Dawn Belardinelli, whom Defendants admit was present at the meeting to discuss

22  matters unrelated to the advice provided by Resnick, constituted a waiver of the attorney-client

23  privilege.  Defendants have not shown that Belardinelli is connected to Plaintiff, the relevant

24  departments and committees, or the events underlying this litigation, or that the advice provided by

25  Resnick concerned matters within the scope of Belardinelli's duties.  Nor have Defendants

26  demonstrated that Belardinelli had any common legal interest with the members of the CPC such as

27  to support an assertion of the common interest privilege.  There is no indication in the minutes of the

28  meeting that Belardinelli was not present at the meeting when the redacted information was

**United States District Court**
For the Northern District of California

1   transmitted to the meeting attendees.  As such, Defendants waived any assertion of attorney-client

2   privilege by disclosing the information to a third party without a common legal interest.[2]

3        Defendants shall produce a copy of TPMG 3826-3832 with the redaction removed by

4   February 21, 2014.

5

6        IT IS SO ORDERED.

7

8   Dated:  February 19, 2014

9

10

11



_____
DONNA M. RYU
United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27       [2]  Because the court finds that Defendants' assertion of privilege has been waived, it declines

28   to reach the other two arguments advanced by Plaintiff regarding the discoverability of the redacted
information.

6